MILLS and another, executors of *Issac Mills*, deceased, *against* WILDMAN and another, administrators of the estate of *Zalmon Wildman*, deceased.

*A*, in *June*, 1819, gave his promissory note to *B*, for a certain sum. In *May* 1824, *A* made and signed an endorsement on such note, by which he acknowledged that he then owed it, and promised to pay, and that he would never avail himself of any statute of limitations in relation to it. On the 13th of *October* 1840, after the death of *B*, *A* made and signed a further endorsement on such note, in these words: "*On a settlement of all accounts between me and the estate of B*, whatsoever balance shall be due on this [note,] shall be paid." The administrators of *B* presented this note, with the endorsements thereon, to the commissioners on *A's* estate, as a claim against that estate, which was allowed. On an appeal by *A's* executors, it was held, 1. that, laying the first indorsement out of the case, the design of that made in 1840, was, to revive or continue the legal remedy on the note, with this qualification only, that when it should be paid or recovered, *A* should have the benefit of applying upon it any balance which might be due from the estate of *B* to *A* on other accounts subsisting between them ; 2. that the existence and amount of such balance were left to be ascertained in the legal mode ; 3. that the commissioners constituted the legal and appropriate tribunal to adjust the accounts between the parties.

In the presentation of claims to commissioners of an insolvent estate, no declaration or other pleadings are usual or necessary ; but where the claim is upon a written instrument, a delivery of that instrument to the commissioners, with a verbal claim for its allowance, is sufficient.

THIS was an appeal from a decree of the court of probate, passed on the 26th of *March* 1844, accepting the report of commissioners on the estate of *Issac Mills*, deceased, represented insolvent. By the doings of these commissioners, a claim in favour of the estate of *Wildman* against the estate of *Mills*, amounting to 2290 dollars, 46 cents, was allowed. The appeal was taken by the executors of *Mills*.

The claim so allowed was founded on the following writings, which were presented to the commissioners : " *New-Haven, June* 26th, 1819. On demand, for value received, I promise to pay to *Zalmon Wildman*, or order, nine hundred and thirty-seven dollars, fifty cents, with interest till paid ; witness my hand. [Signed.] *Isaac Mills.*"

This instrument was indorsed as follows : " *New-Haven*, 14th *May*, 1824. Be it forever known and remembered, that I owe the above note, and will pay it, and will never avail myself of any statute of limitations. *Isaac Mills.*"

" *New-York*, 13th *October*, 1840. On a settlement of all

accounts between me and the estate of *Z. Wildman* Esq., whatsoever balance shall be due on this [note] shall be paid.

*Isaac Mills*."

The genuineness of these writings was admitted. It appeared, that *Mills* died in the early part of *February* 1843; that his estate was represented insolvent, and commissioners were appointed thereon; that the administrators of *Wildman's* estate exhibited said note, with the endorsements thereon, to these commissioners, as a claim in favour of *Wildman's* against *Mills's* estate; and that the commissioners allowed such claim, and made report of their doings to the court of probate. The appellants insisted, that the claim ought not to have been allowed, because it was barred by the statute of limitations. The questions arising in the case were, first, whether the appellants could be permitted to set up the statute of limitations as a defence to the note; and secondly, if they could, whether the note is taken out of the statute, by the endorsements thereon, or either of them. The case was reserved for the advice of this court upon these questions.

*Baldwin*, for the appellants, contended, 1. That the promise by *I. Mills*, in the indorsement of *May* 14th, 1824, before the statute of limitations had attached, that he never would avail himself of any statute of limitations, was without consideration, against the policy of the law, and inoperative after the lapse of six years from that date. *Contant* & al. v. *Chapman*, 2 *Ad. & El. N. S.* 771. (42 *E. C. L.* 905.) *Waters* v. *Earl of Thanet*, 2 *Ad. & El. N. S.* 757. (42 *E. C. L.* 899. 43 *E. C. L.* 869.) The note was consequently barred by the statute, on the 14th of *May* 1830, and so remained until after the death of *Wildman*. It could not, therefore, be properly allowed by the commissioners on *Mills's* estate in 1844, unless a right of action was given to *Wildman's* administrators, by the writing of the 13th of *October* 1840.

2. That the writing referred to had no such effect. To have that effect, the maker must have voluntarily relinquished the protection of the statute, either by an express promise to pay the debt, or by an unqualified and unconditional acknowledgment of it as still due, from which an implied promise may be raised. *Marshall* v. *Dalliber*, 5 *Conn. R.* 480. *Deforest & al.* v. *Hunt*, 8 *Conn. R.* 179. 2 *B. & Ald.* 761. Where

the promise is express and *qualified*, there is no room for the implication of a different promise. *Tanner* v. *Smart*, 6 *B.* & *Cress.* 603. (13 *E. C. L.* 273. 276.) A conditional promise, made after the statute has attached, gives no right of action, unless the plaintiff shows the condition performed. *Heylings* v. *Hastings*, 1 *Salk.* 29. S. C. *Com.* 54. *Davies* v. *Smith*, 4 *Esp.* 36. *Gardner* v. *McMahon*, 3 *Ad.* & *El. N. S.* 561. (43 *E. C. L.* 867. 869.) In the case of *Edmonds* v. *Downs*, 2 *Car.* & *Marshman*, 459. the acknowledgment was : " I shall be happy to pay, when *convenient :* I shall pay no more interest until we can have a fair settlement." It was holden, that the plaintiff was bound to show that it was *convenient*, and also that a *settlement* had taken place. *Chitt. Contr.* 827. 821. The indorsement of *October* 1840, obviously was not intended to give a right of action to *Wildman's* administrators, or to waive the protection of the statute, unless after a full settlement of all accounts, it should appear, that a balance was due. The guarded language used amounts in effect to a declaration that there are out-standing accounts to be settled, and a refusal to pay anything until a liquidation should be made, and a balance shown to be due. No such settlement having been made, the rights of the parties remain as they were before the writing of *October*, 1840, was given.

*C. A. Ingersoll*, for the appellees, contended, 1. That by the indorsement made on the note of the 14th of *May* 1824, in which *Mills* promised, that he never would avail himself of any statute of limitations, he and his executors are estopped from setting up the statute of limitations as a defence. When an agreement is made, previous to the attaching of the statute, by the maker of a note, that he will not plead the statute, he is estopped from pleading it. *Gaylord* v. *Van Loan*, 15 *Wend.* 308. *The Utica Insurance Company* v. *Bloodgood*, 4 *Wend.* 652. That as a general rule, a party will be estopped from denying his own acts or declarations, which were designed to influence the conduct of another, and did influence it, to his disadvantage, see, besides the cases above cited, *Kinney* v. *Farnsworth*, 17 *Conn. R.* 355. *Brown* v. *Wheeler, Id.* 345. *Pickard* v. *Sears*, 6 *Ad.* & *El.* 469. (33 *E. C. L.* 115.) *Gregg* v. *Wells*, 10 *Ad.* & *El.* 90. (37 *E. C. L.* 54.)

2. That if the appellants are permitted to set up the statute of limitations as a defence, it will not avail them ; for by the indorsement of the 13th of *October* 1840, the note is taken out of the statute. In the first place, by the decisions in this state, it is not necessary, in order to take a note out of the statute, that the maker should expressly agree to pay it. If he acknowledge the debt as a subsisting debt, that takes it out of the statute. *Lord* v. *Shaler*, 3 *Conn. R.* 131. *Lord* v. *Harvey*, *Id.* 370. Here is an acknowledgment of the debt, as still subsisting. *Deforest* v. *Hunt*, 8 *Conn. R.* 179. *Marshall* v. *Dalliber*, 5 *Conn. R.* 480. *Austin* v. *Bostwick* & al. 9 *Conn. R.* 496. But secondly, the writing of *October* 1840, was not only an acknowledgment of the debt, but it was also a promise to pay. Thirdly, if it should be considered a promise to pay or allow the note, upon a settlement of accounts, and therefore a conditional promise, its presentation to the commissioners for their adjustment, together with the adjustment and allowance by them, is a compliance with the condition. The claim of *Wildman's* administrators is for the balance due on a settlement of all accounts. This settlement the commissioners were authorized to make, and have made. That a conditional promise, with performance of the condition, is equivalent to an absolute promise, needs no proof.

STORRS, J. Laying out of view the endorsement by *Isaac Mills* on the note in question of *May* 14th, 1824, the effect of which we do not consider it necessary to determine, and resting the case on the writing executed by him, on the 14th of *October* 1840, we are of opinion, that the report of the commissioners should be affirmed.

The appellants concede, that the promise made to the administrators of *Wildman*, and contained in the writing last-mentioned, is as effectual to revive the debt evidenced by the note, and to enable them to recover the amount due on it, as it would have been, if made to *Wildman*, in his life-time ; but they insist, first, that the terms of that promise are such that the administrators, in order to avail themselves of it, are required to show, that there had been a settlement between them and *Mills*, in his life-time, of all matters of indebtedness between him and the estate of *Wildman*, in which an agreed balance was found due from *Mills* to said estate ; and, sec-

ondly, that, if this was not necessary, the claim in the present case was not presented to the commissioners in such a manner that it could be legally allowed by them.

As the instrument in question contains an express promise, which excludes an implied one, the appellees, in order to recover, must rely exclusively upon such express promise: hence it is unnecessary to determine whether, if here were no express promise, the instrument contains any acknowledgment of indebtedness from which the law would raise an implied one; and it is not claimed that there is in this instrument any denial of indebtedness which took away the effect of the express promise, if indeed any such denial would have that effect.   The first question, therefore, is, upon the true construction of this express promise.   In determining this, it is requisite to ascertain the intention of the parties, which must govern in this, as in the case of all other instruments.   Looking at the subject matter of this writing, and the terms made use of in it, we think that its object cannot be mistaken, and that it was intended to obligate the maker of the note mentioned in it to pay any balance which should be due from him, on a fair adjustment of the accounts between him and the payee, irrespective of the circumstance whether that balance should be ascertained on a settlement which should take place of those accounts between the parties to that instrument, or in any other legal mode.   The legal remedy on the note was either barred, or if, in consequence of some acknowledgment or promise not apparent upon it, it was preserved, it was in danger of being barred, by the statute of limitations; and the design of the writing was, to furnish evidence of a promise, which should revive or continue that remedy, but so, however, that when it should be paid or recovered, the maker should have the benefit of applying upon it any balance which might be due from the payee to the maker on other accounts. It was intended to furnish a legal remedy to the administrators of the payee on the note, for what should be justly due to the estate they represented, and, at the same time, to protect the maker against any further liability.   In the absence of explicit language to evince, that it was intended by the parties that such remedy should attach only in the event of a settlement of accounts, which should thereafter take place, between the parties themselves, it would certainly be opposed to the

ordinary rules of construing contracts, to hold the promise in the writing in question, to be thus conditional. The effect of such a construction would be to make its enforcement entirely optional with the maker of the note; since it would be wholly defeated, by a refusal on his part to adjust the accounts between him and the payee; and although it would be competent for him, by his agreement, to make the remedy against him conditional, it is altogether improbable to suppose, that the parties intended such a conditional liability, in the present case. The writing acknowledges the note to be a valid subsisting instrument, on which there is no full defence, unless indeed such a defence should grow out of an adjustment of the other matters of indebtedness between the parties to it. The object of the negotiation, which terminated in the execution of the writing, does not appear to have been to leave in question the validity of the note, but only the balance between the parties, on an adjustment of their other concerns. It would be an ample protection for the maker of the note to leave that balance to be ascertained in the ordinary tribunals of justice, if it could not be adjusted between the parties themselves; and it is much more rational to suppose, that when the parties had agreed upon the principle upon which the amount to be deemed due on the note should be ascertained, such amount should be left to be ascertained in the legal mode, than that a particular mode should be adopted, which might, at the option of one of the parties, prevent such ascertainment, and defeat the general object they had in view, the adjustment of all their concerns. It is not, moreover, presumable, that the administrators of the payee of the note would have relied on a promise, which could have been available only at the option of the maker, unless indeed the situation of the note was such that they could insist on no other, of which there is no evidence. And indeed, it is difficult to conceive an adequate motive why the maker should execute, or the administrators require, so formal an instrument, if it was designed to have no more efficacy than the appellants claim for it.

It is insisted, however, that the language of the writing fairly imports, that the accounts mentioned in it were to be adjusted only between the parties themselves, and that the maker of the note reserved the right of assenting to such adjustment, before

*New-Haven,*
*July, 1846.*

Mills
*v.*
Wildman.

*New-Haven.*
July, 1846.

Mills
*v.*
Wildman.

he should be made liable : and that the phrase " settlement of all accounts between me and the estate of *Z. Wildman*," has here this meaning and effect.   The term " settlement " in this instance, evidently means an adjustment or ascertainment of the balance subsequently mentioned in the writing, and which is the subject of the promise it contains.   Used in this sense, it does not, either properly, or in common parlance, import, that such adjustment or ascertainment is to be made by the parties interested in it, rather than by others.   Nothing is more usual than to refer the settlement or adjustment of accounts, as well as the determination of any other matter about which parties may differ, to third persons.   The intention, in this respect, must, therefore, be ascertained, by something else than the mere word itself; and it is incumbent on the appellants to show, by the context or some other circumstance, that it was used in such a restricted sense, as to denote that the act was to be done only by the parties to the instrument.   In this we think they have not succeeded.   The writing, as the sentence composing it is framed, speaks of the accounts existing between the maker of the note and the estate of the payee as being the subject of the settlement, but not of the parties to the writing as the persons by whom such accounts are to be settled.   Indeed, only one of those parties, the maker of the note, is mentioned in the writing.   We are of opinion, therefore, that the construction of it is, that *Mills* would pay on the note the balance which would remain, after deducting what was due to him from *Wildman*, on all other accounts, from the sum due on the notes.

That such a promise will take the claim out of the operation of the statute of limitations, and that in an action to recover such balance, it may be proved, and allowed on the trial, is plain from the authorities, and, indeed, has not been questioned.

The commissioners constituted the appropriate and legal tribunal to adjust the claims of the respective parties in this case : and of their doings in this respect there is no complaint.

We have do doubt that the claim of the appellees in this case, was legally presented to the commissioners, whether it is to be considered as founded on the note, or the promise contained in the writing indorsed upon it, or both conjointly. In a formal declaration in a suit brought before one of the or-

dinary judicial tribunals, it appears from the authorities, that it would be necessary in this case, by the technical rules of pleading, to count not only on the note, but also on the promise made to the administrators of the payee. But in the presentation of claims to commissioners of an insolvent estate, no declaration or other pleadings are usual or necessary. It is not a technical proceeding. Where the claim is upon a written instrument, the delivery of it to the commissioners, with a verbal claim for its allowance, is all that is customary or requisite. To require the technicalities of pleading in the proceedings before such a tribunal, would serve only to defeat their object, and to produce embarrassment and confusion, delay and expence. In the present case, the note and the writing endorsed on it, were delivered to the commissioners, by the appellees, in the usual mode, with a claim for the allowance of the debt evidenced by them ; and that was all that was necessary.

We are therefore of opinion, that the superior court should be advised to affirm the report of the commissioners.

In this opinion the other Judges concurred.

Report of commissioners to be affirmed.